**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

DIRECTV, INC., a California corporation,

Plaintiff,

vs.

LEWIS ESCALANTE,

Defendant.

_______________________________________/

CASE NO. CV-F-04-6237 OWW TAG

FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

(Docs. 9-13)

**INTRODUCTION**

In this action alleging unauthorized reception of satellite signals and unauthorized interception of electronic communications, plaintiff DIRECTV, Inc. ("Plaintiff") seeks a $10,000 default judgment against Lewis Escalante, an individual ("Defendant"). On December 23, 2004, Plaintiff filed a request for entry of default against Defendant, with a supporting declaration. (Court Docs. 5 and 6). On December 28, 2004, default was entered against Defendant. (Court Doc. 7). On December 29, 2004, Defendant filed a response to the complaint.[1] No motion for relief from the entry of default has been filed to date. On February 7, 2005, Plaintiff filed a motion for default judgment and supporting papers. (Court Docs. 9-13).

[1] On December 29, 2004, Defendant filed undated correspondence addressed "To: whom it may concern" and stating: "I Lewis Escalante never ordered or received or paid or signed for the pirate access device in May 2002 as described in the summons I received." Defendant provided no proof of service with this correspondence. Defendant's correspondence was docketed as an answer.

As discussed below, this Court RECOMMENDS to grant Plaintiff a $2,914.49 default judgment against Defendant.

**BACKGROUND**[2]

Plaintiff, a California company, is the nation's leading direct broadcast satellite system, with more than 10 million customers. Plaintiff's television programming currently includes major cable networks, studio movies and special events programming, as well as a variety of sports and other special interests programming. Plaintiff offers its television programming to residential and business customers on a subscription and pay-per-view basis only. Each customer is required to create an account with Plaintiff, and to obtain an access card and other system hardware from Plaintiff, i.e., a small satellite dish. Once Plaintiff activates the access card, the customer can receive and view in a decrypted format, i.e., unscrambled, those channels to which the customer has subscribed or arranged to purchase from Plaintiff.

On September 10, 2004, Plaintiff filed this action to allege that Defendant purchased and used one pirate access device and illegally modified Plaintiff's access card(s) to access unauthorized viewing of Plaintiff's television programing. (Court Doc. 1). Plaintiff's complaint alleges claims for (first) unauthorized reception of satellite signals in violation of the Federal Communications Act of 1934 (the "Communications Act"), 47 U.S.C. § 605, et seq.,[3] (second) unauthorized interception of electronic communications in violation of the Electronic Communications Privacy Act (the "Wiretap Act"), 18 U.S.C. §§ 2510-2521,[4] (third) willful assembly or modification of devices or equipment in violation of § 605 (e)(4) of the Communications Act, and (fourth) conversion.

On November 16, 2004, Defendant was personally served with a summons and complaint. (Court Docs. 4 and 11, Exh. B). On December 28, 2004, this Court's clerk entered default against Defendant. (Court Doc. 7). Plaintiff seeks a default judgment against Defendant to award $10,000

---

[2] The background recitation is derived from Plaintiff's motion for default judgment and supporting papers and this Court's file.

[3] 47 U.S.C. § 605, et seq., prohibits the unauthorized use of wire or radio communications, including interception and broadcast of pirated cable or broadcast programming.

[4] 18 U.S.C. §§ 2510-2521, prohibits intentional interception of any wire, oral or electronic communication service in violation of the Wiretap Act.

in statutory damages under its second and third claims, or alternatively, its first claim. Plaintiff also seeks an award of $2,894.49 in attorney's fees and costs under 47 U.S.C. § 605(e)(3)(B)(iii) and 18 U.S.C. § 2520(b)(3) for a total judgment of at least $12,894.49.

**DISCUSSION**

**1. Default Judgment Standard**

A court (not clerk) default judgment is required when the claim is for an amount that is not certain or capable of being made certain by computation. See F. R. Civ. P. 55(b)(2). Generally, the default entered by the clerk establishes the defendant's liability:

> Rule 55 gives the court considerable leeway as to what it may require to the entry of a default judgment. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages will be taken as true." (citations omitted). Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977).

Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-918 (9th Cir. 1987).

A full scale evidentiary hearing on a default judgment is not required in every case. See F. R. Civ. P. 55(b)(2); James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993). The amount of damages may be fixed by affidavits or declarations. Transportes Aereos De Angola v. Jet Traders Invest. Corp., 624 F.Supp. 264 (D. Del. 1985); see, Davis v. Fendler, 650 F.2d 1154 (9th Cir. 1981). Where by contract or statute, the plaintiff is entitled to "reasonable" attorney fees, the court upon default judgment will determine the amount to be awarded. James, 6 F.3d at 311.

Granting default judgment is within a court's sound discretion. Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986). Factors considered to determine whether to grant default judgment include:

1. The substantive merits of plaintiff's claim;
2. The sufficiency of the complaint;
3. The amount of money at stake;
4. The possibility of dispute as to any material facts in the case;
5. Whether default resulted from excusable neglect; and
6. "The strong policy of the Federal Rules of Civil Procedure favoring decisions on the merits."

Eitel v. McCool, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

Upon the entry of default, the Court may accept the factual allegations of Plaintiff's complaint as true to assess liability. The complaint alleges that Defendant purchased, used and illegally modified Plaintiff's access card(s) and other pirate access devices designed to permit unauthorized viewing of Plaintiff's television programming. The complaint is sufficiently plead, indicating the substantive merits of Plaintiff's claim, i.e., unauthorized access and viewing of Plaintiff's television programming. Defendant's failure to contest this action in a timely manner and the consequent entry of his default demonstrates an absence of a dispute as to material facts. Other than Defendant's untimely correspondence filed December 29, 2004 (Court Doc. 8), there is no evidence the default resulted from excusable neglect because the service of the complaint and default papers appear in order.

**2. Defendant's "Answer"**

On December 23, 2004, the same day that Plaintiff's request for entry of default was filed, the court clerk received undated correspondence from Defendant containing a single sentence, stating that he "never ordered or received or paid or signed for the pirate access device in May of 2002 as described in the summons." (Court Doc. 8). Defendant's correspondence did not include the complete case number for this action, failed to include or attach a proof of service, and failed to comply with the pleading requirements of Rule 10 (a) of the Federal Rules of Civil Procedure[5] and Rules 7-130[6] and 7-132[7] of this Court's Local Rules.

///

---

[5] Rule 10 provides in pertinent part that: "Every pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, and a designation as in Rule 7(a).

[6] Local Rule 7-130, which was in effect until January 3, 2005, provided in pertinent part that: "All documents presented for filing [] shall be on [] paper [] with numbered lines in the left margin [] . Documents shall be double-spaced []." Effective January 3, 2005, Local Rule 7-130 was revised to add additional requirements related to electronic filing.

[7] Local Rule 7-132, which was in effect until January 3, 2005, provided in pertinent part that: "[C]ommencing on the eighth line of the initial page of each document [], there shall appear: (1) the title of the Court, (2) the title of the action, (3) the file number of the action, followed by the initials of the Judge and Magistrate Judge to whom it is currently assigned, (4) a title describing the document, (5) immediately below the case number and title of the document, a statement of the date, time and name of the Judge and Magistrate Judge for any scheduled hearing, and (6) any other matter required by these Rules." Effective January 3, 2005, Local Rule 7-132 was renumbered to become part of Local Rule 5-133

It is not known when the court clerk ascertained that Defendant's correspondence pertained to the instant case; however, the correspondence was filed on December 29, 2004, the day after Defendant's default was entered. The docket reflects that no proof of service of Defendant's correspondence has been filed to date; thus it appears that Defendant also failed to comply with the service requirement of Rule 12 (a) of the Federal Rules of Civil Procedure.[8]

Defendant was served with notice of Plaintiff's motion for default judgment, as well as the notice of re-setting of the hearing on the motion. (Court Docs. 13, 15 and 16). Defendant filed no response to the motion, did not appear at the hearing on the motion, and, to date, has failed to request relief from the entry of his default.

A defendant may appear in an action until his or her default is entered by the court clerk. Where the fact of a defendant's failure to plead or otherwise respond to the complaint within the time required by the Federal Rules is established, the court clerk is required to enter the defendant's default. F. R. Civ. P. 55(a). Once the defendant's default has been entered, the defendant no longer has the right to defend the action, and the only papers the court clerk can accept from the defendant is a motion for relief from the default. In this case, Defendant was personally served with a summons and complaint on November 16, 2004. Defendant had until December 6, 2004 to serve an answer to the complaint or to file a Rule 12 motion. F. R. Civ. P. 12. Defendant failed to answer the complaint by December 6, 2004, thus the court clerk properly entered the default on December 28, 2003, upon receipt of Plaintiff's request to enter the default.[9]

Defendant's undated letter response to the complaint (Court Doc. 8) should be stricken, unless the Court sets aside the entry of default "for good cause shown." F. R. Civ. P. 55(c). Defendant has failed to request relief from the entry of his default since December 28, 2004. The Court is cognizant that Defendant is an individual, and his correspondence response to the complaint reflects that he is representing himself. Nevertheless, any individual representing himself without an

[8] Rule 12(a) provides in pertinent part that: "(1) Unless a different time is prescribed in a statute of the United States, a defendant shall serve an answer

(A) within 20 days after being served with the summons and complaint . . . ."

[9] The Request for Entry of Default includes a date and time stamp reflecting that it was filed at 1:42 p.m. on December 23, 2004.

attorney is bound by the Federal Rules of Civil Procedure and by this Court's Local Rules. See, Local Rule 83-183. In the absence of a motion to set aside the default, coupled with the absence of any explanation as to why Defendant failed to answer the complaint in a proper fashion and within the time required by the Federal Rules, the Court concludes that no good cause has been shown to set aside the entry of default.

**3. Plaintiff's Federal Communications Act Claims**

**47 U.S.C. § 605(a) Claim**

Plaintiff's first claim contends that Defendant violated 47 U.S.C. § 605(a) by receiving and/or assisting others in receiving Plaintiff's satellite transmissions of television programming without authorization. Plaintiff requests statutory damages between $1,000 and $10,000.

47 U.S.C. § 605(a) addresses the unauthorized publication or use of wire or radio communications and provides in pertinent part:

> No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Although § 605(a) is a criminal statute, 47 U.S.C. § 605(e)(3)(A) provides that "[a]ny person aggrieved by any violation of [§ 605(a)] or [§ 605(e)(4)] may bring a civil action in a United States district court." Section 605(e)(3)(A) thus authorizes Plaintiff to bring a private cause of action to enforce § 605(a).

Based on the allegations in the complaint, Defendant purchased, received, and used a pirate access device to receive Plaintiff's satellite transmissions of its television programming. The Court finds that Plaintiff's complaint properly alleges a claim for relief under § 605(a), and that upon entry of Defendant's default, the factual allegations are thus appropriately taken as true. Accordingly, Plaintiff is entitled to a default judgment against Defendant for a § 605(a) violation. Damages are addressed below.

**47 U.S.C. § 605(e)(4) Claim**

Plaintiff's third claim contends that Defendant violated 47 U.S.C. § 605(e)(4) by programming and reprogramming Plaintiff's access cards to surreptitiously obtain Plaintiff's satellite programming. This claim also contends that Defendant removed and inserted pirate access devices

and/or inserted illegally programmed access cards into Plaintiff's receivers, and thus unlawfully assembled or modified its devices in violation of § 605(e)(4). Plaintiff contends that it is entitled to $10,000 in statutory damages for Defendant's conduct.

§ 605(e)(4) provides:

> "Any person who manufactures, assembles, modifies, imports, exports, sells or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming , or direct-to-home satellite services, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined not more than $500,000 for each violation, or imprisoned for more than 5 years for each violation, or both. For purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each such device shall be deemed a separate violation."

47 U.S.C. § 605(e)(4).

A number of courts have held that § 605(e)(4) is intended to target illegal commercial use. "A reasonable reading of this provision demonstrates that § 605(e)(4) targets upstream manufacturers and distributors, not the ultimate consumer of pirating devices, such as defendant." DIRECTV, Inc. v. Albright, 2003 WL 22956416, at *2 (E.D. Pa. 2003); see, also, DIRECTV, Inc. v. Getchel, 2004 WL 1202717, at *3 (D. Conn. 2004) (declined to award damages where there was no allegation or evidence that defendant was other than a consumer).

Although Plaintiff alleged a violation of § 605(e)(4) in its complaint, there are no factual allegations to support a finding that Defendant manufactured, assembled, modified, imported, exported, sold or distributed any pirating devices to or for others, or assisted others in the interception of satellite transmissions. The relevant portions of the complaint generally allege that "Defendant has purchased and illegally modified DIRECTV Access Card(s) and other Pirate Access Devices that are designed to permit viewing of DIRECTV's television programming without authorization by or payment to DIRECTV." (Court Doc. 1, 3:10-12). The more specific factual allegations contend that "On or about June 4, 2002, Defendant purchased a Pirate Access Device called a 'T911,' also known as a 'loader,' from TestSat. The device was shipped to Defendant's address in Bakersfield, California." (Court Doc. 1, 4:3-5). The complaint alleges at most, that Defendant purchased one pirate access device, it was shipped to him, and he illegally modified it.

///

The Court concludes that there is nothing in the complaint to support a conclusion that Defendant was more than an ultimate consumer, and there is no evidence that Defendant distributed or profited from the purchase of the device or intended it for resale. Accordingly, the Court cannot conclude that Defendant violated 47 U.S.C. § 605(e)(4), and finds that an award of damages for violating 47 U.S.C. § 605(e)(4) is unwarranted.

**4. Wiretap Act Claim**

______Plaintiff's second claim contends that Defendant violated 18 U.S.C. §2511(1)(a) by using pirate access devices to decrypt and view Plaintiff's satellite television transmissions. Section 2511 prohibits the interception and disclosure of wire, oral or electronic communications and provides in pertinent part as follows:

> (1) . . . any person who – (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5)."

18 U.S.C. § 2511(1)(a).

18 U.S.C. § 2520 provides a private cause of action for violation of the Wiretap Act for "any person," such as Plaintiff, "whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of" the Wiretap Act. 18 U.S.C. § 2520(a). The United States District Court for the Northern District of California has addressed the private right of action issue and held as follows:

> Section 2520(a) of Title 18 U.S.C. creates a private cause of action for interception, disclosure or intentional use of wire, oral or electronic communication. DIRECTV, Inc. v. Beauchamp, 302 F.Supp.2d 786, 796 (W.D. Mich. 2004); [DIRECTV, Inc. v. Hosey, 289 F.Supp.2d 1259, 1263 (D. Kan. 2003)]; DIRECTV, Inc. v. Huynh, 318 F.Supp.2d 1122, 1129 (M.D. Ala. 2004); [DIRECTV, Inc. v. Lewis, 2004 WL 941805, at *6 (W.D. N.Y. 2004)]. Section 2520(a) provides: Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person . . . which engaged in that violation such relief as may be appropriate.

In the Matter of DIRECTV, Inc., 2004 WL 2645971, at *7 (N.D. Cal. 2004). As noted by Plaintiff, although at least one case, DIRECTV, Inc. V. DeCroce, 332 F.Supp.2d 715 (D. N.J. 2004), has held that no private cause of action exists for the violation of 18 U.S.C. § 2511, Plaintiff has provided a list of over 80 cases across the United States where district courts have acknowledged the existence

of a private cause of action under 18 U.S.C. § 2520(a) for the violation of 18 U.S.C. § 2511. (Court Doc. 9, Exh. A).

Based on the allegations in Plaintiff's complaint, Defendant purchased, received, and used a pirate access device to intercept Plaintiff's satellite programming. In light of the entry of Defendant's default, these allegations are deemed uncontested and taken as true. Plaintiff's complaint is sufficiently pled to allege Defendant's unauthorized interception of Plaintiff's programming. Given the entry of Defendant's default, the Court finds that there is no dispute of material facts. Therefore, Plaintiff is entitled to a default judgment against Defendant for a § 2511(1)(a) violation. Damages are addressed below.

**5. Damages**

Having concluded that Plaintiff is entitled to default judgment, the Court next addresses damages. Plaintiff seeks damages, attorney's fees and costs for defendant's violation of 47 U.S.C.A. § 605. Section 605 provides that the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to any aggrieved party." 47 U.S.C.A. § 605(e)(3)(B)(iii). In its motion for default judgment, Plaintiff requested $2,894.49 as reasonable attorney's fees and costs. (Court Doc. 11, p. 3). Plaintiff filed a declaration of Suzanne M. Burke, the attorney for Plaintiff, appended to which was an invoice showing the costs and fees incurred by Plaintiff's attorneys through February 7, 2005. (Court Doc. 11, Exh. E). This invoice indicates $164.49 in costs expended for filing fees and overnight express mail. The Court finds these costs to be appropriate, reasonable, and recoverable. Accordingly, Plaintiff is entitled to recover costs of $164.49.

Section 605 also provides for an award of reasonable attorney's fees. While the Court is required by statute to award attorney's fees, the determination of the fee amount is left to the Court's discretion, Dowdell v. City of Apopka, 698 F.2d 1181, 1187 (11th Cir. 1983), as guided by the factors identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, (5th Cir. 1974). As noted in DIRECTV, Inc. v. Huynh, 318 F.Supp.2d 1122 (M.D. Ala. 2004), these type of cases present no particularly complicated legal issues. See, DIRECTV, Inc. v. Hamilton, 215 F.R.D. 460, 463 (S.D. N.Y. 2003) (reducing DIRECTV's request for $11,245.12 in attorney's fees to $1,500 because "these types of cases are routine, straightforward and do not require extensive research"). Also as indicated

in Huynh, the amount that plaintiff's attorneys have requested exceeds the highest award of attorney's fees the Court could find in similar cases brought by DIRECTV. See, DIRECTV, Inc. v. Lackey, 2004 WL 42254, *1 (N.D. Tex. 2004) (awarding $1,612.70 in attorney's fees in case decided at summary judgment stage). The Court finds that Plaintiff's $2,730 attorney's fee request is not reasonable but that an award of $1,750 in attorney's fees is reasonable under the circumstances of this case. DIRECTV, Inc. v. Huynh, 318 F.Supp.2d 1122 (M.D. Ala. 2004). Accordingly, Plaintiff is entitled to recover attorney's fees of $1,750.

In addition to costs and fees, the Court has the discretion to award damages under 47 U.S.C.A. § 605. 47 U.S.C.A. § 605(e)(3)(B)(ii). Title 47 U.S.C. § 605(e) provides that any "person aggrieved by any violation of subsection (a) . . . may bring a civil action in a United States district court or in any other court of competent jurisdiction." Section 605(e)(4) provides that for purposes of all penalties and remedies established, the prohibited practices established as it applies to each such device shall be deemed a separate violation.

Plaintiff asserts that § 605(e) authorizes a court to award statutory damages of not less than $1,000 nor more than $10,000 for each violation of § 605(a), with additional damages of up to $100,000 per violation, upon showing that a defendant acted willfully and for the purposes of direct or indirect commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(I), (ii); (Court Doc. 9). A court has discretion to increase the award to not more than $100,000, where it finds that the defendant's violation was committed "willfully and for the purposes of direct or indirect commercial advantage or private financial gain," or to decrease the award to no less than $250 where the court finds that the defendant "was not aware and had no reason to believe that his acts constituted a violation of" § 605(a). 47 U.S.C. § 605(e)(3)(C)(ii), (iii).

In the complaint, Plaintiff requested "$10,000 for each Pirate Access Device used and possessed in violation of 18 U.S.C. § 2520(c)(2) and 47 U.S.C. § 605(e)(4)." Since Plaintiff alleged in its complaint that Defendant purchased and used only one such device, Plaintiff may recover no greater amount than $10,000, plus attorneys' fees and costs, in this case. The Court has found that Defendant violated § 605(a).

///

Based on one violation of § 605(a), Plaintiff shall recover "a sum not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C.A. § 605(e)(3)(C)(i)(I)(II). Courts have cited a number of factors in determining a "just" amount of damages: (1) whether the defendant profited as a result of his violation, DIRECTV, Inc. v. Perrier, 2004 WL 941641, *3 (W.D. N.Y. 2004); (2) whether the defendant assisted or induced others in violating the statute, id.; (3) whether the defendant's violation was willful or flagrant, DIRECTV, Inc. v. Albright, 2003 WL 22956416, at *3 (E.D. Pa. 2003); (4) whether the damage award will be sufficient to deter similar conduct, id.; and (5) whether the damage award is comparable to awards in similar cases, DIRECTV, Inc. v. Perrier, 2004 WL 941641, at *3 (W.D. N.Y. 2004). The burden is on Plaintiff to provide justification for why damages in excess of the minimum should be awarded. DIRECTV, Inc. v. Hamilton, 215 F.R.D. 460, 463 (S.D. N.Y. 2003).

Based on the foregoing, the Court finds that an award of $1,000 in damages is just. The record establishes that Plaintiff purchased one pirate device. Aside from potentially receiving Plaintiff's satellite television programming free of charge for an unspecified period of time, there is no indication that Defendant otherwise profited from his conduct. Coupled with the award of attorney's fees and costs, the Court finds that a statutory damages award of $1,000 will compensate Plaintiff adequately for any loss it suffered, punish Defendant for his alleged wrongdoing, and serve as a sufficient deterrent to Defendant and others. Finally, an award of $1,000 in damages is in line with the awards in similar DIRECTV cases. See, e.g., DIRECTV v. Kaas, 294 F.Supp.2d 1044, 1049 (N.D. Iowa 2003) (awarding damages of $1,000 under § 605(e)(3)(c); DIRECTV, Inc. v. Malizie, 2004 WL 1682827, *3- 4 (W.D. N.Y. 2004) (same); Albright, 2003 WL 22956416, at *3; DIRECTV, Inc. v. Huynh, 318 F.Supp.2d 1122 (M.D. Ala. 2004) (same). Accordingly, default judgment in the amount of $1,000 will be entered against Defendant.

Plaintiff also seeks relief for Defendant's violation of 18 U.S.C. § 2511. Section 2520(c)(2) provides that the Court may assess damages for violations of § 2511, and makes an award of damages discretionary. See, e.g., DIRECTV v. Brown, 371 F.3d 814, 818 (11th Cir. 2004) (holding that an award of damages under Section 2520(c)(2) is discretionary); Dorris v. Absher, 179 F.3d 420, 429-30 (6th Cir. 1999); DirecTV v. Guzzi, 308 F.Supp.2d 788, 790 (E.D. Mich. 2004). However,

once the Court elects to award damages under Section 2520, the Court must award the greater of "(A) the sum of actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." 18 U.S.C.A. § 2520(c)(2)(A) & (B). This means that if the Court determines that damages are appropriate, the Court cannot award less than $10,000 regardless of how minor the transgression might be.

The Court has "broad discretion, to award damages as authorized by the statute, or to award no damages at all." DIRECTV, Inc. v. Kaas, 294 F.Supp.2d 1044, 1048 (N.D. Iowa 2003) (citing Reynolds v. Spears, 93 F.3d 428, 435 (8th Cir. 1996). In Kass, the court granted plaintiff's motion for default judgment but awarded no damages under 18 U.S.C. § 2520(c)(2) after noting that "there is no evidence [the defendant] profited from the pirate access device" and that "although a reasonable assumption, there is no evidence he even used the device, only that he received it." Kass, 294 F.Supp.2d at 1049. In deciding whether to award damages under § 2520(c)(2), courts in similar DIRECTV cases have also looked at the following factors: the extent of DIRECTV's financial harm, Guzzi, 308 F.Supp.2d at 790; the extent of the defendant's violation, id.; whether the defendant had a legitimate reason for his actions, id.; whether an award of damages would serve a legitimate purpose, id.; and whether the defendant was also subject to another judgment based on the same conduct, Perrier, 2004 WL 941641, at *4. DIRECTV, Inc. v. Huynh, 318 F.Supp.2d 1122 (M.D. Ala. 2004).

As decided in Huynh, and consistent in this case, Plaintiff will receive a judgment against defendant for his violation of 47 U.S.C. § 605(a), a violation premised on the same underlying conduct. The Court finds that its award of damages under § 605 "appropriately punishes [Defendant] for his illegal actions, adequately compensates [Plaintiff] for any damage it suffered, and sufficiently deters others from engaging in similar unlawful conduct." Perrier, 2004 WL 941641, at *4; Huynh, 318 F.Supp. 2d at 1122. Based on the foregoing, the Court exercises its discretion to award no damages to Plaintiff for Defendant's violation of 18 U.S.C. § 2511.

///

///

**RECOMMENDATIONS**

The undersigned recommends the following:

1. Defendant's correspondence filed on December 29, 2004 BE STRICKEN from the court file in this action. (Court Doc. 8).

2. Plaintiff's Motion for Default Judgment against Defendant be GRANTED. (Court Docs. 9-13).

3. Default judgment in the amount of $2,914.49 be entered against Defendant as follows:

a. $1,000.00 for federal statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II).

b. $1,914.49 for costs, including attorney fees.

These findings and recommendations are submitted to United States District Judge Oliver W. Wanger, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304. Within fifteen (15) court days after service of these findings and recommendations on the parties, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties and the magistrate judge in compliance with this Court's Local Rule 72-304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Responses to objections shall be served and filed within ten (10) court days after service of the objections in compliance with this Court's Local Rule 72-304(d). A copy of the responses must be served on the magistrate judge. The district court will then review the magistrate judge's ruling, pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated: April 21, 2005**
j6eb3d

**/s/ Theresa A. Goldner**
UNITED STATES MAGISTRATE JUDGE